**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OFARIZONA

| | | |
|---|---|---|
| United States of America, | ) | No. CR 06-0676-PHX-DGC |
| Plaintiff, | ) | |
| vs. | ) | **ORDER** |
| Fengjuan Lu, | ) | |
| Defendant. | ) | |

On June 15, 2009, following a four-day trial, the jury returned a verdict finding Defendant Fengjuan (Lucy) Lu guilty of 8 of 11 counts of structuring monetary transactions in violation of 31 U.S.C. § 5324(a)(3). When Defendant moved for a judgment of acquittal at the close of the government's case, the Court reserved decision as permitted by Federal Rule of Criminal Procedure 29(b). Following the verdict, Defendant again moved for acquittal. Because Defendant's motions concerned the sufficiency of the evidence, the Court requested briefing. The parties have now filed their briefs. Dkt. ##106, 107, 110. For the reasons that follow, the Court will deny Defendant's motions.

**I.  Legal Standard.**

The Court must grant Defendant's motion if the evidence presented by the government "is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). In determining sufficiency, the Court must view the evidence in the light most favorable to the government and deny the motion if any rational trier of fact could have found the elements of the crime beyond a reasonable doubt. *United States v. Atalig*, 502 F.3d 1063, 1066 (9th Cir. 2007).

The Court must also consider all reasonable inferences that can be drawn from the evidence in support of the verdict. *United States v. Shea*, 493 F.3d 1110, 1114 (9th Cir. 2007).

Because Defendant made her Rule 29 motion at the close of the government's case and the Court reserved decision, the Court must "decide the motion on the basis of the evidence at the time the ruling was reserved." Fed. R. Crim. P. 29(b). In other words, the Court must decide whether the government had presented sufficient evidence to sustain the conviction before Defendant testified in her own defense. Because Defendant renewed her motion at the close of trial, the Court must also consider whether the evidence at the close of trial was sufficient to sustain a conviction.

## II. Sufficiency of the Evidence.

The Court provided the following jury instruction on the crime of structuring financial transactions.

> The defendant is charged in the indictment with structuring financial transactions in violation of Section 5324(a)(3) of Title 31 of the United States Code. In order for the defendant to be found guilty of that charge, the government must prove each of the following elements beyond a reasonable doubt.
>
> First, the defendant engaged in financial transactions through one or more domestic financial institutions;
>
> Second, the defendant knew that the financial institutions were obligated to report currency transactions in excess of $10,000, and structured the financial transactions for the purpose of evading these reporting requirements; and
>
> Third, the offense occurred within the District of Arizona.
>
> A person structures a transaction if that person, acting alone or in conjunction with or on behalf of other persons, conducts or attempts to conduct one or more transactions in currency, in any amount, at one or more financial institutions, on one or more days, "in any manner," for the purpose of evading bank reporting requirements. "In any manner" includes, but is not limited to, the breaking down of a single sum of currency exceeding $10,000 into smaller sums, including sums at or below $10,000, or the conduct of a transaction, or series of currency transactions, including transactions at or below $10,000. The transaction or transactions need not exceed the $10,000 reporting threshold at any single financial institution on any single day in order to constitute structuring within the meaning of this definition.

Dkt. #80, Instruction No. 15.

1    At trial, Defendant did not contest the first and third elements of the crime. She admitted engaging in financial transactions through one or more domestic financial institutions, and agreed that the transactions occurred in Arizona. Nor did Defendant dispute the timing and amount of deposits established by the government's evidence. She admitted to making numerous cash deposits of just under $10,000 during the summer of 2003, often making deposits that would total more than $10,000 on the same day or within a few days of each other. The dates and amounts of Defendant's deposits, all of which were made at Phoenix-area branches of Bank of America, are as follows:

| Count | Dates | Amounts |
| --- | --- | --- |
| 1 | 7/21/03<br>7/23/03 | $7,595.00<br>$4,790.00 |
| 2 | 7/28/03<br>7/31/03<br>8/01/03 | $7,000.00<br>$7,405.00<br>$8,660.00 |
| 3 | 8/04/03<br>8/05/03 | $3,370.00, $4,340.00 & $7,500.00<br>$2,100.00 |
| 4 | 8/11/03<br>8/12/03 | $9,900.00 & $8,475.00<br>$9,800.00 |
| 5 | 8/18/03<br>8/19/03 | $9,880.00<br>$9,900.00 |
| 6 | 9/15/03 | $9,700.00, $9,900.00 & $9,260.00 |
| 7 | 9/16/03<br>9/17/03 | $9,800.00<br>$9,900.00 |
| 8 | 9/22/03 | $9,900.00 & $2,925.00 |
| 9 | 9/25/03 | $9,500.00 & $4,380.00 |
| 10 | 9/26/03 | $9,800.00, $9,700.00 & $9,030.00 |
| 11 | 9/29/03<br>9/30/03 | $9,900.00<br>$2,620.00 |

Dkt. #106 at 1-2.

The question to be decided by the jury, then, was whether Defendant satisfied the second element of the Court's jury instruction: whether "the defendant knew that the financial institutions were obligated to report currency transactions in excess of $10,000, and

1  structured the financial transactions for the purpose of evading these reporting requirements."
2  Dkt. #80, Instruction No. 15. The Court concludes that the government presented sufficient
3  evidence during its case-in-chief for a reasonable juror to conclude that Defendant acted with
4  this knowledge and intent.

Witness Bryan Schrock testified that he was a teller at Bank of America who handled some of Defendant's cash deposits. On August 7, 2002, Defendant attempted to make two deposits with Mr. Schrock that, together, exceeded $10,000. Mr. Schrock told Defendant that the bank would need to complete a "CTR report in order to complete this transaction." Dkt. #98 at 92. Mr. Schrock testified as follows: "I told her that because of the dollar amount I would need to fill out a large currency transaction CTR report." *Id.* at 108. When asked what he explained to Defendant about the CTR report, Mr. Schrock testified: "anytime I had to fill out a CTR report I would have told whatever customer was in front of me that this was for government tracking." *Id*. at 109. Mr. Schrock told Defendant that "it's a report that we send to the government. I might not have specifically said the treasury, but it goes to the government." *Id*. In response, Defendant made only one of the deposits.

When pressed on cross-examination, Mr. Schrock confirmed the statements he made to Defendant:

> Q. Okay. If you were – if you had to fill out a CTR, what was your standard practice.
>
> A. The standard practice would be to go get the form needed and start filling it out, applicable information applied on the form.
>
> Q. All right. Would you tell the customer that you had to fill out a form?
>
> A. At that point, yes.
>
> Q. Would you tell the customer you needed to get identification?
>
> A. Yes.
>
> Q. And if the customer pressed you as to why you wanted that information would you tell the customer that the report is based on a cash transaction?
>
> A. On a large cash transaction.

| | | |
|---|---|---|
| 1 | Q. | Large cash transaction. Okay. The distinction is, you don't tell them it is $10,000? |
| 2 | A. | Correct. I do not give the specific amount. |
| 3 | Q. | And you don't tell them it's going to the United States government? |
| 4 | A. | Just the government. Whether it is the U.S. government or whoever. |
| 5 | Q. | You do tell them it's going to the government? |
| 6 | A. | Yes, sir. |

Dkt. #99 at 65-66.

Viewing this testimony in the light most favorable to the government, a reasonable juror could find that on August 7, 2002, in response to Defendant's attempt to deposit more than $10,000 in two transactions, Mr. Schrock informed Defendant that the bank was required to complete a large currency transaction report, referred to as a CTR report, that the report was used for government tracking purposes, and that the report would be sent to the government. Mr. Schrock testified that the two deposits Ms. Lu was intending to make on that day were for $9,500 and $665. Dkt. #107-2 at 10. When Mr. Schrock informed her of the CTR report requirement, Ms. Lu elected not to deposit the $665. From this testimony the jury reasonably could conclude that Ms. Lu understood that the large currency transaction report was required for a deposit between $9,500 and $10,165.

Kimberly Alford, another Bank of America teller, testified that on November 28, 2001, Defendant attempted to deposit more than $10,000. Ms. Alford told Defendant that she would need to complete a CTR report. Dkt. #107-2 at 17. In response, Defendant deposited less than $10,000. *Id*. at 17-18. Other tellers also testified about their interactions with Defendant.

From the testimony of Mr. Schrock and Ms. Alford, the jury reasonably could conclude not only that Defendant knew the bank was required to provide a CTR report to the government, but also that the triggering amount was $10,000. This conclusion was also supported by the amounts of Defendant's transactions listed above. Between August 11 and September 29, 2003, Defendant made 15 deposits in excess of $9,000. Many were made on

the same day, or within a day, of other deposits that would raise the total to above $10,000. Some deposits were as high as $9,900, but no single deposit exceeded $10,000. From this evidence the jury reasonably could infer that Defendant understood that $10,000 was the threshold for filing a CTR report.

In sum, the testimony of Mr. Schrock and Ms. Alford and the precise amounts of the 15 deposits made by Defendant in August and September of 2003 were sufficient for a reasonable jury to conclude beyond a reasonable doubt that Defendant knew the bank was obligated to report to the government currency transactions in excess of $10,000, and structured her deposits to evade this reporting requirement. The government was not required to prove that Defendant knew the structuring was illegal. *United States v. Pang*, 362 F.3d 1187, 1193 (9th Cir. 2004).

Defendant contends that the jury's acquittal on Counts 1-3 is inconsistent with this conclusion. The Court does not agree. None of the deposits at issue in Counts 1-3 reached or exceeded $9,000. None were made in the same close proximity as the deposits at issue in Counts 4-11. The jury reasonably could have concluded that the pattern of transactions after August 11, 2003 revealed a deliberate attempt to evade the $10,000 reporting requirement.

Defendant makes various other arguments as to why the government's case was not credible. She points to alleged impeachment of witnesses, and cites to her own testimony that she did not understand the reporting requirement and sought simply to avoid the hassle of more paperwork. The Court's task, however, is not to assess credibility or re-weigh the evidence. The question to be decided in this order is whether the evidence, viewed in the light most favorable to the government, provided a basis for a rational trier of fact to find the elements of the crime of structuring beyond a reasonable doubt. *Atalig*, 502 F.3d at 1066. The evidence satisfied this standard both at the close of the government's case and the close of trial.

**IT IS ORDERED:**

1. Defendant's motions for acquittal (Dkt. ##85, 106) are **denied**.

2. The Court will hold a conference with counsel on **September 22, 2009 at 3:00 p.m.** to discuss the steps that must be completed for the Court to make a forfeiture ruling and to sentence Defendant.

DATED this 10th day of September, 2009.

_____
David G. Campbell
United States District Judge